People v Edmondson (2025 NY Slip Op 02083)

People v Edmondson

2025 NY Slip Op 02083

Decided on April 9, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 9, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
BARRY E. WARHIT
LOURDES M. VENTURA
JAMES P. MCCORMACK, JJ.

2022-05697
 (Ind. No. 2849/89)

[*1]The People of the State of New York, appellant,
v
Samuel Edmondson, respondent.

Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove and Jordan Cerruti of counsel), for appellant.
Edelstein & Grossman, New York, NY (Jonathan I. Edelstein of counsel), for respondent.

DECISION & ORDER
Appeal by the People from an order of the Supreme Court, Kings County (Vincent M. Del Giudice, J.), dated June 14, 2022. The order, after a hearing, granted the defendant's motion pursuant to CPL 440.10 to vacate a judgment of the same court (Ronald J. Aiello, J.) rendered July 11, 1990, convicting him of murder in the second degree (two counts), attempted murder in the second degree, enterprise corruption, and criminal possession of a weapon in the second degree (three counts), upon a jury verdict, and imposing sentence, and for a new trial on the ground of newly discovered evidence.
ORDERED that the order is modified, on the law, by deleting the provisions thereof granting those branches of the defendant's motion which were pursuant to CPL 440.10 to vacate so much of the judgment rendered July 11, 1990, as convicted him of the count of murder in the second degree relating to the shooting of William May, attempted murder in the second degree, enterprise corruption, and the counts of criminal possession of a weapon in the second degree relating to the shootings of William May and Brian Fleming, respectively, and the sentences imposed on those convictions, and substituting therefor provisions denying those branches of the motion; as so modified, the order is affirmed, those portions of the judgment rendered July 11, 1990, convicting the defendant of the count of murder in the second degree relating to the shooting of William May, attempted murder in the second degree, enterprise corruption, and the counts of criminal possession of a weapon in the second degree relating to the shootings of William May and Brian Fleming, respectively, and the sentences imposed on those convictions are reinstated, and the matter is remitted to the Supreme Court, Kings County, which, upon at least two days' notice to the defendant and his attorney, shall promptly direct the defendant to surrender himself to the court in order that execution of those portions of the judgment may resume.
The defendant was charged with various crimes, including, among other crimes, murder in the second degree, attempted murder in the second degree, enterprise corruption, and criminal possession of a weapon in the second degree for conduct occurring between 1987 and 1988. At trial, the People presented evidence that during that time period, the defendant ran a drug-selling enterprise, which packaged and sold crack cocaine at various locations, grossing up to as much as $150,000 to $175,000 per day. The People also presented evidence that the defendant was involved [*2]in the shootings of Kenneth Rankin, William May, and Brian Fleming, which resulted in the deaths of Rankin and May, and injury to Fleming. The People's evidence with respect to the shooting of Rankin included, in pertinent part, the testimony of Keith Christmas, who testified to witnessing that shooting, which occurred in June 1987.
The evidence of the defendant's guilt in connection with the shooting of Fleming consisted of, among other things, the testimony of Kyle Patterson, a member of the defendant's organization, and Fleming, who worked as a doorman providing security at one of the defendant's "spots," which were locations where members of the defendant's organization sold crack cocaine. Patterson testified at trial that Fleming "kept messing up the money" by roughing up the seller and taking vials and money. According to Patterson, he, the defendant, and a codefendant, John Amante, the defendant's chief lieutenant, discussed how to handle the problem with Fleming, and the defendant decided to "smoke" Fleming. In August 1987, Fleming was driven to a remote location on the outskirts of John F. Kennedy International Airport, where, according to Patterson, the defendant signaled to Amante to shoot Fleming. Amante directed Fleming out of the vehicle at gunpoint. The defendant told Patterson, who was also armed, to "help him," referring to Amante. Fleming testified that he then heard the defendant say, "Do it." Fleming pushed Amante and tried to run away, but Patterson and Amante fired numerous shots at Fleming, striking him. The police subsequently responded to a report of a shooting near the airport and found Fleming, who had sustained multiple gunshot wounds.
In connection with the shooting of May, who had also been a member of the defendant's organization, the People presented evidence that the defendant and Amante had May killed because they believed he had stolen money and drugs. According to the People's evidence, on January 7, 1988, there was a fire at one of the defendant's drug spots where May was working. May reportedly said that the money and drugs had been lost in the fire, but Patterson testified that Amante, among others, thought May was lying. Patterson testified that he and Amante met with the defendant and the decision was made to kill May.
Patterson testified that May was brought to a drug spot referred to as Wyona. Thomas Sutton, also known as Thomas Porter (hereinafter Porter), who owned the building in which the Wyona drug spot was run, testified that he saw Patterson bring May to the basement of the building. Porter further testified that while he was in the backyard next to the basement door, he overheard Patterson ask May, "What did you do with the money?" Porter testified that he heard Amante call May a "liar" and the sound of someone being struck. Porter also heard the defendant state, "You know what you got to do here. So wrap it up and let's get the fuck out of here." Porter testified that he heard three gunshots and later saw Amante carrying May out of the building.
Porter testified that the defendant waited for the others to come out of the basement and then drove away. Amante put May in a vehicle and then Amante, Patterson, and another individual known as "Pipeman" left with May. Patterson testified that the plan had been to drive May to another location where Pipeman was going to shoot May inside of the vehicle, after which Patterson, Amante, and Pipeman would leave together in the defendant's vehicle. When they arrived at the location, May fled from the vehicle, but Pipeman caught up to May and shot him.
Following the trial, the defendant was convicted of murder in the second degree (Penal Law § 125.25) (two counts) relating to the shootings of Rankin and May, respectively, attempted murder in the second degree (id. §§ 110.00, 125.25) relating to the shooting of Fleming, enterprise corruption (id. § 460.20), and criminal possession of a weapon in the second degree (id. § 265.03) (three counts) relating to the shootings of Rankin, May, and Fleming, respectively. The defendant appealed from the judgment of conviction and, thereafter, moved pursuant to CPL 440.10 to vacate the judgment of conviction. By order dated October 3, 2000 (hereinafter the October 2000 order), the Supreme Court denied the motion without a hearing. This Court granted the defendant's application for leave to appeal from the October 2000 order and consolidated the appeal from the October 2000 order with the defendant's appeal from the judgment of conviction. In December 2002, this Court affirmed the judgment of conviction and the October 2000 order (see People v Edmondson, 300 AD2d 317).
In May 2020, the defendant again moved pursuant to CPL 440.10 to vacate the judgment of conviction. The defendant sought to vacate the judgment of conviction pursuant to CPL 440.10(1)(g) based upon newly discovered evidence, which included a letter dated August 5, 2015, from a lawyer representing Christmas, who had testified at the defendant's trial regarding the defendant's involvement in the murder of Rankin. In the letter, the lawyer asserted, inter alia, that Christmas had recanted his trial testimony regarding the Rankin murder and that such testimony had been developed during "coaching sessions" led by Detective Louis Scarcella. The defendant's motion was also based on evidence that Scarcella had engaged in misconduct in other unrelated cases and on an affidavit dated June 6, 1990, from Porter, wherein Porter purportedly recanted his trial testimony.
The Supreme Court conducted a hearing on the defendant's motion, at which it heard testimony from Christmas, Scarcella, and Porter, among others. Following the hearing, the court, finding Christmas's hearing testimony to be credible and Scarcella's testimony to be incredible, granted the defendant's motion and ordered a new trial. The People appeal.
CPL 440.10(1)(g) provides, in pertinent part, that a court may vacate a judgment of conviction upon the ground that "[n]ew evidence has been discovered since the entry of a judgment based upon a verdict of guilty after trial, which could not have been produced by the defendant at the trial even with due diligence on his part and which is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant."
"To vacate a judgment of conviction based on newly discovered evidence, a defendant must demonstrate that the newly discovered evidence fulfills all the following requirements: '1. It must be such as will probably change the result if a new trial is granted; 2. It must have been discovered since the trial; 3. It must be such as could have not been discovered before the trial by the exercise of due diligence; 4. It must be material to the issue; 5. It must not be cumulative to the former issue; and, 6. It must not be merely impeaching or contradicting the former evidence'" (People v Spencer, 208 AD3d 1370, 1371, quoting People v Hargrove, 162 AD3d 25, 55). "Only the first three criteria listed above have an explicit basis in CPL 440.10(1)(g), while the latter three criteria 'have been derived exclusively from case law,' and 'should be used to evaluate the ultimate issue of whether the new evidence would create a probability of a more favorable verdict'" (id. [internal quotation marks omitted], quoting People v Hargrove, 162 AD3d at 56, 60; see People v DeLeon, 190 AD3d 764). "[I]n order to fully appreciate the likely effect of [the] new evidence at the trial, it . . . must be considered in the context of the relative strength of the People's evidence of guilt" (People v Hargrove, 162 AD3d at 66; see People v Spencer, 208 AD3d at 1371).
Here, contrary to the People's contention, the Supreme Court did not improvidently exercise its discretion in granting those branches of the defendant's motion which were to vacate so much of the judgment of conviction as convicted him of murder in the second degree and of criminal possession of a weapon in the second degree relating to the shooting of Rankin and the sentences imposed on those convictions, and for a new trial on those counts based on Christmas's recantation. At trial, the People presented evidence indicating that the defendant had ordered the murder of Rankin, and Christmas testified that he witnessed the shooting of Rankin. At the CPL 440.10 hearing, however, Christmas testified that his trial testimony regarding the Rankin murder was fabricated and that his false testimony was developed during meetings with Scarcella. The court found Christmas's CPL 440.10 hearing testimony in this regard to be credible. Although, at trial, the People presented, among other evidence, testimony from another witness who was present during the shooting of Rankin, under the circumstances, the defendant sufficiently demonstrated that Christmas's recantation evidence was of such a character to create a probability that, had such evidence been received at trial, the verdict on the aforementioned counts would have been more favorable to the defendant (see People v DeLeon, 190 AD3d at 765; People v Hargrove, 162 AD3d at 59-60).
However, the Supreme Court erred in granting those branches of the defendant's motion which were to vacate so much of the judgment of conviction as convicted him of murder in [*3]the second degree relating to the shooting of May, attempted murder in the second degree relating to the shooting of Fleming, enterprise corruption, and criminal possession of a weapon in the second degree in connection with the shootings of May and Fleming, respectively. Initially, Scarcella did not testify at trial regarding any of the crimes of which the defendant was convicted. Scarcella's testimony solely related to the police investigations into other shootings allegedly involving two codefendants. Moreover, and significantly, there was no evidence that Scarcella engaged in improper conduct with respect to any witness other than Christmas, and Christmas did not provide any testimony at trial regarding either the attempted murder of Fleming or the subsequent murder of May. As set forth above, the defendant's conviction of attempted murder was based upon, among other evidence, the testimony of Patterson and Fleming, while the evidence of the defendant's guilt with respect to the murder of May consisted of, inter alia, the testimony of Patterson and Porter, among others.
Further, Christmas's trial testimony regarding the Rankin murder was not significant to the enterprise corruption conviction, which was independently supported by substantial testimonial and physical evidence directly implicating the defendant in that crime. The Rankin murder and the weapon possession charge in connection therewith constituted only 2 of the 17 predicate acts supporting the defendant's enterprise corruption conviction. Additionally, although Christmas testified at trial regarding the defendant's drug-selling enterprise, Christmas did not recant that testimony. Rather, Christmas confirmed during his CPL 440.10 hearing testimony that he ran one of the drug-selling locations for the defendant for approximately one month. Moreover, the People presented overwhelming independent evidence of the defendant's guilt of enterprise corruption, including the testimony of several cooperating witnesses, record books that had been recovered by the police, which documented drug sales and listed beeper numbers of the defendant and other organization members , as well as evidence of the recovery of large quantities of drugs and cash. The police also recovered the defendant's insurance card, his identification card, and more than $98,000 in cash from a vehicle that was linked to the defendant (see People v Green, 178 AD3d 603).
Contrary to the defendant's further contention, he was not entitled to vacatur of the conviction of murder in the second degree and the sentence imposed thereon relating to the shooting of May based upon the purported recantation affidavit of Porter. This Court, on the defendant's appeal from the judgment of conviction, previously rejected the defendant's contention that he was entitled to a new trial based upon the same affidavit, holding that "[t]he defendant's contention that he is entitled to a new trial based upon the conclusory recantation of one of the People's witnesses [Porter] was properly denied without a hearing" (People v Edmondson, 300 AD2d at 318). In the order appealed from, the Supreme Court did not indicate that it credited the statements in Porter's affidavit, and the court did not refer to Porter's affidavit as a ground for its determination to vacate the judgment of conviction. The court based the determination to vacate the judgment of conviction solely on Christmas's recantation. Although Porter testified at the CPL 440.10 hearing, he testified that his trial testimony was true.
Under the circumstances of this case, there was no reasonable probability that the verdict with respect to the convictions of murder in the second degree relating to the shooting of May, attempted murder in the second degree relating to the shooting of Fleming, enterprise corruption, and criminal possession of a weapon in the second degree relating to the shootings of May and Fleming, respectively, would have been more favorable to the defendant had the proffered newly discovered evidence been introduced at trial (see People v Spencer, 208 AD3d at 1371; People v Ivanitsky, 188 AD3d 719, 720).
The defendant's remaining contention is without merit.
Accordingly, the Supreme Court should have denied those branches of the defendant's motion which were pursuant to CPL 440.10 to vacate so much of the judgment of conviction as convicted him of murder in the second degree relating to the shooting of May, attempted murder in the second degree, enterprise corruption, and criminal possession of a weapon in the second degree relating to the shootings of May and Fleming, respectively, and the sentences [*4]imposed on those convictions.
DILLON, J.P., WARHIT, VENTURA and MCCORMACK, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court